Mark H. Jensen*
mjensen@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Yufei Wang (SBN 346170)
ywang@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE SHANNON and REBEKKA LIEN, individually and on behalf of all others similarly situated

Plaintiffs,

v.

HEALTH NET, LLC

Defendant.

Case No. 2:26-cv-03814-RGK-E

**PLAINTIFFS' OPPOSITION TO DEFENDANT HEALTH NET, LLC'S MOTION TO DISMISS**

Hearing Date: July 13, 2026
Time: 9:00 a.m.
Judge: Hon. R. Gary Klausner
Courtroom: 850, 8th Floor

Complaint Filed: April 9, 2026

# TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

LEGAL STANDARD ........ 3

ARGUMENT ........ 3

I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing ........ 3

II. Plaintiffs Have Stated A Claim Under The Federal Wiretap Act ........ 6

III. Plaintiffs Adequately Plead A Claim Under CIPA § 631 ........ 7

A. Defendant Cannot Escape Liability Under CIPA As A Party To The Communication ........ 8

B. Plaintiffs Have Adequately Pled Aiding And Abetting Under CIPA § 631(a) ........ 9

C. Plaintiffs Adequately Plead Interception Of Communications In Transit ........ 10

IV. Plaintiffs Adequately Plead A Claim Under CIPA § 638.51 ........ 10

V. Plaintiffs Have Stated Claims Under The California Constitution And For Common Law Intrusion Upon Seclusion ........ 11

A. Plaintiffs Adequately Plead A Reasonable Expectation Of Privacy ........ 11

B. Plaintiffs Adequately Plead A Highly Offensive Intrusion ........ 12

VI. Plaintiffs Have Stated A Claim For Common Law Fraud ........ 13

VII. Plaintiffs Have Stated Claims Under the UCL and CLRA ........ 14

A. Plaintiffs Have Standing Under the UCL and CLRA ........ 15

B. Plaintiffs' Claims As To Defendant's Unlawful Conduct Under The CLRA And UCL Are Pled With Sufficient Specificity ........ 16

VIII. Plaintiffs Adequately Plead Unjust Enrichment ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ....................................................................... 15

*A.J. v. LMND Med. Grp.*,
No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ... 17

*Allison v. PHH Mortg.*,
No. 25-cv-05323-RFL, 2026 U.S. Dist. LEXIS 107416 (N.D. Cal. May 14, 2026)..... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................... 3

*B.K. v. Desert Care Network*,
No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) ........................................................................................................................ 15

*Beltran v. Drs. Med. Ctr. of Modesto*,
No. 2:23-cv-01670-DC-CKD, 2025 U.S. Dist. LEXIS 109145 (E.D. Cal. June 9, 2025) ........................................................................................................................ 11

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................................................................... 11

*Brown v. Google LLC*,
No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) 15

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276 (C.D. Cal. Apr. 5, 2023) .. 6

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)......................................................................... 4

*Cappello v. Walmart Inc.*,
394 F. Supp. 3d 1015 (N.D. Cal. 2019) ..................................................................... 16

*Casillas v. Six Flags Ent. Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ............................................................... 10, 13

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)................................................................... 11, 12

*D'Antonio v. CNN, Inc.*,
No. 24 CV 3132 (VM), 2026 U.S. Dist. LEXIS 78088 (S.D.N.Y. Apr. 9, 2026).........4

*Doe 1 v. AOL, LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010)....................16

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022)....................15

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025)....................16

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016)....................16

*Folgelstrom v. Lamps Plus, Inc.*,
125 Cal. Rptr. 3d 260 (Ct. App. 2011)....................12

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)....................4, 10, 13, 16

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026)....................4, 5, 10

*Gianne v. Accor Mgmt. US Inc.*,
No. CV 25-2425-DMG (Ex), 2026 U.S. Dist. LEXIS 75987 (C.D. Cal. Mar. 31, 2026)....................7

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907 (N.D. Cal. Jan. 6, 2026)........3, 5

*Goldstein v. Rumble Inc.*,
No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489 (C.D. Cal. Apr. 24, 2026)....................10

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................10, 12

*Gutierrez v. Converse Inc.*,
No. 2:23-cv-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023)....................3

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................13

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 7, 11, 12

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024) ..... 11

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSx, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) ........ 5

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 3, 6, 12, 16

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 15

*In re Vizio*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 12

*In re Zoom Video Communs. Inc. Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........ 16

*India Price v. Carnival Corporation*,
712 F.Supp.3d 1347 (S.D. Cal. 2024) ........ 12

*Javier v. Assur. IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) ..... 5

*Krzyzek v. Openx Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ 6, 10

*Lee v. Toyota Motor Sales, U.S.A.*,
Inc., 992 F. Supp. 2d 962 (C.D. Cal. 2014) ........ 13, 14

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 8, 9, 10

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) ........ 9

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 3

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 6

*Mitchener v. Curiositystream, Inc.*, 815 F. Supp. 3d 845 (N.D. Cal. 2025) .......... 5

*Patel v. Facebook*,
932 F.3d 1264 (9th Cir. 2019) .......... 3

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964 (N.D. Cal. Nov. 24, 2025) .... 4, 13, 14, 16

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4

*Reynolds v. Spears*,
93 F.3d 428 (8th Cir. 1996) .......... 6

*Ribas v. Clark*,
212 Cal. Rptr. 143, 696 P.2d 637 (1985) .......... 8

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 6

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024) .......... 8, 10

*Rodriguez v. Autotrader.Com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 10

*Roney v. Miller*,
705 F. Appx. 670 (9th Cir. 2017) .......... 17

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......... 12

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .. 5, 11

*Smart v. Main Line Health*,
No. 22-5239, 2026 U.S. Dist. LEXIS 81515 (E.D. Pa. Apr. 14, 2026) .......... 7

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750 (N.D. Cal. Aug. 4, 2025) .... 12

Stark v. Patreon, Inc.,
635 F. Supp. 3d 841 (N.D. Cal. 2022) .......... 14

*Taylor v. ConverseNow Techs., Inc.*, No. 25-cv-00990-SI, 2025 U.S. Dist. LEXIS 154861 (N.D. Cal. Aug. 11, 2025) .......... 8

*Thomas v. Papa John's Int'l, Inc.*,
Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025) .......... 8

*Thornton v. Micro-Star Int'l Co.*,
No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912 (C.D. Cal. Oct. 23, 2018) .......... 14, 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3

*Turner v. Nuance Commc'ns*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .......... 8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 13

*Vishal Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 10

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N.D. Cal. Oct. 16, 2025) .......... 4

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 6

Cal. Bus. & Prof. Code § 17200 .......... 14

Cal. Civ. Code § 1770 .......... 14

Cal. Civ. Code § 1782(a) .......... 15

Cal. Penal Code § 631(a) .......... 7

**Rules**

Fed. R. Civ P. 12(b)(6) .......... 3

Fed. R. Civ. P. 9(b) .......... 13

Plaintiffs Steve Shannon and Rebekka Lien respectfully submit this response in opposition to Defendant Health Net, LLC's Motion to Dismiss (ECF No. 22).

## INTRODUCTION

This putative class action arises from Defendant's unlawful invasions into its website users' privacy. Defendant is a health insurer whose website invites users to browse and enroll in health plans, then secretly tracks that activity and transmits it to advertising, social media, and analytics companies, like Meta and The Trade Desk, even after users affirmatively decline non-essential cookies. Like many websites, Defendant's website utilizes proprietary tracking technologies to engage in, *inter alia*, targeted marketing and analytics in order to generate more revenue from users' data. Defendant's website purports to give users control over what data it collects and shares with, and/or sells to, third parties; however, the consent mechanisms are deceptive and illusory. The website begins placing and transmitting third-party tracking technologies immediately upon a user's initial visit, before users receive any meaningful notice or opportunity to control the interception and/or dissemination of their personal data. Moreover, Defendant's Website continues its surreptitious tracking practices even after users affirmatively reject the sale and/or sharing of their personal data. Plaintiffs allege that Defendant's conduct violates multiple federal and state statutes, as well as common law.

Defendant now moves to dismiss the Complaint; however, Defendant's Motion ignores several authorities recognizing Article III standing in similar circumstances. Indeed, Defendant's procurement and deployment of advanced tracking software on its website, used to intercept, disclose, and monetarily exploit Plaintiffs' personal data, constitutes conduct that falls within the prohibitions of, *inter alia*, the federal Wiretap Act and California privacy law. Accordingly, Defendant's Motion should be denied.

## FACTUAL BACKGROUND

Defendant owns and operates a website[1] (the "Website") through which users can browse and enroll in health insurance plans, locate and interact with healthcare providers, manage their member accounts, review claims and billing information, and explore other healthcare resources. Compl. ¶ 2 (ECF No. 1). Upon navigating to the Website, users, like Plaintiffs, encounter a cookie banner ("Cookie Banner") directing them to accept, decline, or manage their cookie preferences via a "[c]ookie [p]references" hyperlink. *Id.* Users who manage their privacy preferences are redirected to a pop-up window (the "Cookie Settings") that purports to allow users to reject the Website's use of advertising, marketing, analytics, and performance cookies, and to consent only to essential cookies, i.e., those that are strictly necessary for the Website's functionality. Compl. ¶¶ 2-6.

In actuality, users are tracked via cookies and other third-party tracking technologies (the "Tracking Tools") the moment they navigate to the Website, before they can consent to the sale/sharing of their personal data. Compl. ¶ 3. Moreover, even after users engage with the Cookie Banner and Cookie Settings to affirmatively reject all non-essential Tracking Tools, the Website continues to utilize and deploy Tracking Tools, transmitting users' Sensitive Information[2] to the advertising, social media, and analytics companies that designed and operate the Tracking Tools (the "Tracking Entities"[3]). Compl. ¶¶ 5-7. In essence, the Website's Cookie Banner and Cookie Settings

---

[1] https://www.healthnet.com/content/healthnet/en_us.html.

[2] "Sensitive Information" refers to detailed interaction and behavioral data, including users' selections of links, buttons, forms, and other on-page elements, as well as information entered into search fields and may include webpages and products viewed or purchased; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers such as device type, operating system, and browser type. The data also includes persistent identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information derived from IP addresses or similar signals. Compl. ¶ 5.

[3] The Tracking Entities include, but are not limited to, Meta Platforms, Inc. ("Meta") and The Trade Desk. Compl. ¶¶ 10, 61-96.

are designed to deceive users, depriving them of control over and diminishing the value of their Sensitive Information so that Defendant can monetize that information. *See* Compl. ¶¶ 3-9, 36-41, 50-56, 97-106.

**LEGAL STANDARD**

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Examples of concrete but intangible harms include "reputational harms, ***disclosure of private information***, and intrusion upon seclusion." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added).

To defeat a motion under Fed. R. Civ P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056, at *2 (C.D. Cal. Oct. 27, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**ARGUMENT**

**I. Plaintiffs Have Suffered Concrete Injuries, Establishing Article III Standing**

The "right to privacy encompass[es] [an] individual's control of information concerning his or her person." *Patel v. Facebook*, 932 F.3d 1264, 1273 (9th Cir. 2019). It logically follows that the unauthorized tracking and disclosure of Plaintiffs' Sensitive Information satisfies Article III's concreteness requirement. *See, e.g., Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 U.S. Dist. LEXIS 1907, at *5-6 (N.D. Cal. Jan. 6, 2026); *In re Facebook,* 956 F.3d 589, 599 (9th Cir. 2020); *Patel*, 932 F.3d at 1272. Courts in the Ninth Circuit continue to hold that a plaintiff establishes Article III standing where a defendant deprives them of control over their personal information via Tracking Tools without their consent. *See In re Facebook*, 956 F.3d at 599; *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *5-7; *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852,

866 (N.D. Cal. 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *10 (C.D. Cal. May 5, 2026); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964, at *10 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1104 (S.D. Cal. 2025).

Plaintiffs' allegations here align with the above authorities. Here, as in those cases, Plaintiffs allege Defendant procured the Tracking Entities and their Tracking Tools to place tracking and identifying cookies on Plaintiffs' devices. *See* Compl. ¶¶ 2-7, 10, 15-16, 35-49, 53-59, 66-67, 74-75, 92-96, 97-106. These Tracking Tools intercepted and shared Plaintiffs' Sensitive Information (defined in fn. 3, *supra*) with the Tracking Entities without Plaintiffs' consent. *Id.* Defendant and the Tracking Entities then used the insights derived from Plaintiffs' Sensitive Information for marketing and targeting advertising purposes, enhancing their bottom line. *Id.* Thus, Plaintiffs' allegations are sufficient to confer Article III standing.

Relying primarily on *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), Defendant argues that "Plaintiffs fail to allege a concrete injury" because they "do[] not allege what information they provided on the Website or that any such information was disclosed on a webpage with the pixels embedded." Def.'s Mem. at 4, 5 (citing *Popa*, 153 F.4th at 790-95). However, a review of the Complaint refutes Defendant's argument. *See* Compl. ¶¶ 2-7, 10, 15-16, 35-49, 53-59, 66-67, 74-75, 92-106; *see also* fn. 3, *supra*. And the Court should be persuaded, "similar to the *Gilligan* and *Camplisson* courts – that [*Popa*]…is off-point given the factual circumstances present in that case." *See D'Antonio v. CNN, Inc.*, No. 24 CV 3132 (VM), 2026 U.S. Dist. LEXIS 78088, at *12 n.2 (S.D.N.Y. Apr. 9, 2026). "In *Popa*, the court found that the alleged injury did not have a common-law analogue . . . but as the *Camplisson* court remarked, the facts in that case are 'distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a

privacy harm in a wide variety of cases.'" *Id.* (quoting *Camplisson*, 809 F. Supp. 3d at 1106); *see also Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 U.S. Dist. LEXIS 15193, at *6-7 (N.D. Cal. Jan. 27, 2026). Here, as in *Shah* and *Gilligan*, "[t]he scope of the alleged tracking . . . is materially more invasive than the limited tracking at issue in [*Popa*]." *Gilligan*, 2026 U.S. Dist. LEXIS 1907, at *6; *see also Shah*, 2026 U.S. Dist. LEXIS 15193, at *6. Here, like *Gilligan*, "Plaintiffs allege that [Defendant] compiled detailed profiles by tracking their interactions across many websites, and that the tracking 'across the internet' remains ongoing." *Id.* As in *Garcia*, the Complaint asserts that the Tracking Tools on Defendant's Website intercepted and transmitted Plaintiffs' Sensitive Information "without [their] consent and despite [their] choice to reject all cookies through a cookie consent banner," "such that Plaintiff[s] lacked any choice in whether third-party cookies were placed on her device such that her user data would be transferred." *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *9; *see also Shah*, 2026 U.S. Dist. LEXIS 15193, at *5-8 (similar); Compl., *e.g.*, ¶¶ 2-7, 10, 15-16, 35-49, 53-59, 66-67, 74-75, 92-106. Thus, *Popa* does not support Defendant's position, and the remaining cases cited are similarly distinguishable.

In *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025), the plaintiff only "made four general allegations about how Defendant caused Plaintiff's alleged injury." *Id.* at *6; *see also Mitchener v. Curiositystream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025) (same). The *Kishnani* and *Mitchener* courts reasoned that because Plaintiff only generally alleged that "Defendant invaded his privacy by impermissibly collecting Plaintiff's 'data' and 'information,'" the plaintiff failed to allege facts from which the court could infer a concrete injury. *Id.* at *7; *see also Mitchener*, 815 F. Supp. 3d at 850 (same). The reasoning in *Kishnani* and *Mitchener* was premised on pleading deficiencies that, as explained above, are not present here. Similarly, in *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSx, 2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024), the court reasoned that the plaintiff failed to establish Article III standing because "[the Complaint]

does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit." *Id.* at *10; *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, at *8 (C.D. Cal. Apr. 5, 2023) (similar). Because Plaintiffs' Complaint does not suffer from the pleading deficiencies identified in *Kishnani*, *Mitchener*, *Hughes*, and *Byars*, Defendant's Motion must be denied.

## II. Plaintiffs Have Stated A Claim Under The Federal Wiretap Act

Defendant does not challenge whether Plaintiffs have satisfied the elements of their Wiretap claim. Rather, Defendant relies on the "party defense" under 18 U.S.C. § 2511(2)(d), arguing that it qualifies as a party to the communications at issue. *See* Def.'s Mem. at 5-6. However, the "party defense" does not shield Defendant from liability here. The "party defense" shields only direct interceptors, not procurers. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925-26 (D. Minn. 2024) (citing *Reynolds v. Spears*, 93 F.3d 428, 432 (8th Cir. 1996)); *see also In re Facebook*, 956 F.3d at 608. Here, Plaintiffs allege Defendant is a procurer rather than a direct interceptor. *See*, *e.g.*, Compl. ¶¶ 3, 7, 9, 11, 36-43, 55-59.

Even if the Court were to find the "party defense" applicable, the statute's crime-tort exception still renders Defendant liable. Defendant procured and installed the Tracking Tools for the purpose of facilitating interception of users' data by the Tracking Entities, invading Plaintiffs' privacy and violating multiple state statutes. Defendant argues that Plaintiffs fail to allege a criminal purpose, but Plaintiffs' claims for intrusion upon seclusion and fraud provide a basis for the crime-tort exception. *See Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 U.S. Dist. LEXIS 107416, at *32 (N.D. Cal. May 14, 2026); *see also Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 U.S. Dist. LEXIS 94801, at *8-13 (N.D. Cal. Apr. 29, 2026). Further, a tortfeasor being primarily motivated by profit does not dispose of the crime-tort exception. *See Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025); *see also Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 869 (N.D. Cal. 2026).

Additionally, Defendant's procurement of the Tracking Entities caused the interception of the contents of Plaintiffs' communications, violating the second clause of CIPA § 631(a). Defendant's ***subsequent use*** of that intercepted information for marketing and analytics purposes constituted a ***separate and independent*** violation of the third clause of CIPA § 631(a), which prohibits any person who "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." For purposes of the crime-tort exception, this subsequent use constitutes a distinct criminal and tortious act from the initial interception. *See Smart v. Main Line Health*, No. 22-5239, 2026 U.S. Dist. LEXIS 81515, at *8-9 (E.D. Pa. Apr. 14, 2026). Accordingly, Plaintiffs have stated a claim under the federal Wiretap Act.

## III. Plaintiffs Adequately Plead A Claim Under CIPA § 631

CIPA § 631 imposes liability on any person who, "by means of any machine, instrument, contrivance, or in any other manner," (1) intentionally taps a wire, line, cable, or instrument; (2) willfully attempts to read or learn the contents or meaning of any communication while in transit; (3) uses or attempts to use any information so obtained; or (4) aids, agrees with, employs, or conspires with any person to unlawfully do, or cause to be done, any of the acts mentioned in the section. *See* Cal. Penal Code § 631(a).

Plaintiffs allege that users' Sensitive Information is captured without consent and transmitted to Tracking Entities in real time via Tracking Tools. *See* Compl. ¶¶ 3-10, 15-16, 36-43, 50-59, 96-103, 169-70. Plaintiffs further allege that Defendant procured the Tracking Entities to read and learn the contents of Plaintiffs' Sensitive Information while in transit to and from Defendant without Plaintiffs' consent. *Id.* Defendant and the Tracking Entities subsequently used this intercepted Sensitive Information to build marketing profiles of the Website's users. *See* Compl. ¶¶ 10, 40-41, 66-75, 94-96, 136. Thus, Plaintiffs' allegations are sufficient to state a claim under CIPA § 631(a). *See Gianne v. Accor Mgmt. US Inc.*, No. CV 25-2425-DMG (Ex), 2026 U.S. Dist. LEXIS 75987, at *16-17 (C.D. Cal. Mar. 31, 2026)*; see also Heerde v. Learfield Commc'ns, LLC,* 741 F. Supp. 3d 849, 861 (C.D. Cal. 2024).

### A. Defendant Cannot Escape Liability Under CIPA As A Party To The Communication

Defendant argues that it "cannot be held liable for alleged eavesdropping under the second clause of § 631(a)," "because [Defendant] is a party to the communications . . ." Def.'s Mem. at 9. However, "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 212 Cal. Rptr. 143, 146, 696 P.2d 637, 640 (1985). Whether the Tracking Entities constitute "unannounced second auditor[s]" turns on whether the Tracking Entities have the capability to use the content of Plaintiffs' communications with Defendant's Website for any purpose other than providing those communications to Defendant. *See Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (finding the party exception inapplicable because plaintiff alleged that the trackers ***could use*** intercepted communications for purposes ***beyond benefitting the website owner***). Courts continue to follow the reasoning in *Ribas* and *Javier*. *See*, *e.g.*, *Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1226-27 (C.D. Cal. 2024); *Taylor v. ConverseNow Techs., Inc.*, No. 25-cv-00990-SI, 2025 U.S. Dist. LEXIS 154861, at *12-13 (N.D. Cal. Aug. 11, 2025); *Turner v. Nuance Commc'ns*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024).

Defendant relies on *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072 (C.D. Cal. 2023), and *Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025); however, *Thomas* involved intra-site session replay (as opposed to the Tracking Tools at issue here),[4] and *Licea* turned on a pleading deficiency not present here, i.e., "the pleadings . . . nowhere suggest that the third party has the ability ***to use the information independently***." *Licea*, 659 F. Supp. 3d at 1083 (emphasis added). Here, the Complaint repeatedly alleges that the Tracking Entities

[4] *Thomas*, 2025 U.S. App. LEXIS 15039, at *3.

utilize the intercepted information for, inter alia, their own marketing and analytics, and that the Tracking Tools tracked Plaintiffs across multiple sites. *See*, *e.g.*, Compl. ¶¶ 5, 10, 41-43, 56-59, 66, 72, 75, 88-95, 136, 170. Therefore, *a fortiori*, the Tracking Entities/Tracking Tools are much more analogous to "an eavesdropper" than "a tape recorder." *See Licea*, 659 F. Supp. 3d at 1082.

**B. Plaintiffs Have Adequately Pled Aiding And Abetting Under CIPA § 631(a)**

Defendant next argues that the Complaint "does not allege *how* the third parties violated § 631. . . ." Def.'s Mem. at 9 (emphasis in original) (citing *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023)). However, the allegations in the Complaint far exceed the allegations in *Vitacost.com*, which were insufficient to establish that the third-party interceptor violated CIPA § 631(a) and, therefore, could not establish that the defendant aided and abetted that violation. *Id.* As explained above, Plaintiffs' allegations explain in detail how the Tracking Entities violated § 631(a). *See* Compl. ¶¶ 7-10, 15-16, 36-49, 58-96. The deficiency in *Vitacost.com* is not present here.

Next, Defendant argues that "plaintiffs fail to allege the defendant knew the third party was using or distributing the collected data." Def.'s Mem. at 10. Again, the allegations in the Complaint contradict Defendant's argument. *See* Compl. ¶¶ 36-49 (explaining how Defendant programmed the Website to deploy Tracking Tools), 58-84 (explaining how Defendant's Website uses Tracking Tools to intercept communications, the exact process by which the Meta Pixel was installed on the Website, and what information was disclosed by Meta to Defendant during implementation of the Meta Pixel), 85-96 (explaining the exact process by which The Trade Desk Pixel was installed on the Website, and what information was disclosed by The Trade Desk to Defendant during implementation of The Trade Desk Pixel). These allegations establish that Defendant knew how the Tracking Entities were using and/or distributing Plaintiffs' Sensitive Information.

**C. Plaintiffs Adequately Plead Interception Of Communications In Transit**

Defendant next argues that Plaintiffs fail to allege interception in transit. *See* Def.'s Mem. at 10-11 (citing Compl. ¶¶ 19, 56, 96, 170; *Licea*, 659 F. Supp. 3d at 1084). But the paragraphs in the Complaint cited by Defendant are sufficient to overcome the deficiency described in *Licea*. Defendant's argument also ignores several other allegations that provide further explanation and detail as to interception in transit. *See* Compl. ¶¶ 40-43, 58-59, 68-76, 79, 88-96, 136; *see also Rodriguez v. Autotrader.Com, Inc.*, 762 F. Supp. 3d 921, 928 (C.D. Cal. 2025) (Klausner, R.G.) (allegations that "search queries are intercepted by third parties" and "rerouted to the third-party search engine provider and . . . advertising companies" are sufficient to satisfy the 'in-transit' requirement); *Rodriguez*, 735 F. Supp. 3d at 1227-28 (similar); *Goldstein v. Rumble Inc.*, No. CV 25-06304-MWF (SKx), 2026 U.S. Dist. LEXIS 113489, at *13-15 (C.D. Cal. Apr. 24, 2026) (similar). Thus, Plaintiffs have adequately stated claims under the second and fourth clauses of § 631(a).

**IV. Plaintiffs Adequately Plead A Claim Under CIPA § 638.51**

Defendant next argues that the Tracking Tools are not pen registers or trap and trace devices because "they collect information within a communication." Def.'s Mem. at 11. However, courts have routinely rejected that argument and sustained CIPA § 638.51 claims on materially similar allegations and tracking technology. *See Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1211-12 (C.D. Cal. 2026) (***Meta Pixel*** is a pen register/trap and trace device); *Garcia*, 2026 U.S. Dist. LEXIS 101782, at *16-18; *Casillas v. Six Flags Ent. Corp.,* 812 F. Supp. 3d 1016 (C.D. Cal. 2025) (similar); *Gabrielli*, 815 F. Supp. 3d at 871-72 (similar); *Krzyzek*, 817 F. Supp. 3d at 870 (similar). In assessing what constitutes a "pen register," courts "should focus less on the form of the data collector and more on the result." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *see also Casillas*, 812 F. Supp. 3d at 1033; *Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024).

Defendant's alternative request for a stay should be denied. A stay requires a showing of hardship that outweighs the harm to Plaintiffs, and courts in this District continue to adjudicate CIPA § 638.51 claims notwithstanding *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. App. Ct., petition filed Nov. 21, 2025); a stay would delay discovery and prejudice Plaintiffs and the putative class while resolving nothing the Court cannot decide now.

## V. Plaintiffs Have Stated Claims Under The California Constitution And For Common Law Intrusion Upon Seclusion

Invasion of privacy under the California Constitution and common law intrusion upon seclusion both require a reasonable expectation of privacy and conduct that is "highly offensive." *See Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974 (S.D. Cal. 2023). Plaintiffs satisfy both elements.

### A. Plaintiffs Adequately Plead A Reasonable Expectation Of Privacy

Plaintiffs had a reasonable expectation of privacy in their Sensitive Information, including information entered into search fields, page views, and links clicked. *See Heerde*, 741 F. Supp. 3d at 859; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). Defendant independently created an additional basis for Plaintiffs' reasonable expectation of privacy by representing to Plaintiffs that they could control what information was shared with third-party Tracking Entities. *See Shah*, 2026 U.S. Dist. LEXIS 15193, at *12-14; *see also Brown*, 525 F. Supp. 3d at 1066.

Defendant argues that Plaintiffs "have no reasonable expectation of privacy . . . in the 'browsing activity, device identifiers, and related metadata' Plaintiffs allege." Def.'s Mem at 7 (citing *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 U.S. Dist. LEXIS 117876, at *22-23 (N.D. Cal. July 1, 2024); *Beltran v. Drs. Med. Ctr. of Modesto*, No. 2:23-cv-01670-DC-CKD, 2025 U.S. Dist. LEXIS 109145, at *18 (E.D. Cal. June 9, 2025). However, *Hubbard*'s reasoning was based on a pleading deficiency as to the type and breadth of information collected/disseminated and expressly stated that "[t]his is not a case involving secret or deceptive data collection." *Hubbard*, 2024 U.S. Dist. LEXIS

117876, at *23. And Beltran involved a similar pleading deficiency, i.e., "vague" allegations that "[did] not allege facts describing any such 'medical data.'" *Beltran*, 2025 U.S. Dist. LEXIS 109145, at *20-21. Given the breadth of the Plaintiffs' Sensitive Information and the fact that this case does involve, as one of its core issues, deceptive data collection, *Hubbard*'s and *Beltran*'s reasoning does not lessen Plaintiffs' reasonable expectation of privacy here.

**B. Plaintiffs Adequately Plead A Highly Offensive Intrusion**

Defendant's disclosure of Plaintiffs' Sensitive Information was highly offensive; courts consistently reason that invasion into the information of the type and breadth alleged here gives rise to a highly offensive intrusion. *See*, *e.g.*, *Heerde*, 741 F. Supp. 3d at 865; *Greenley*, 684 F. Supp. 3d at 1047; *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 U.S. Dist. LEXIS 149750, at *13 (N.D. Cal. Aug. 4, 2025); *In re Vizio*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017); *Price v. Carnival Corp.*, 712 F.Supp.3d 1347, 1363 (S.D. Cal. 2024). Nonetheless, whether Defendant's tracking and disclosure practices would highly offend a reasonable person cannot be resolved at the pleading stage. *See In re Facebook*, 956 F.3d at 606; *Cousin*, 702 F. Supp. 3d at 974; *Greenley*, 684 F. Supp. 3d at 1046; *Heerde*, 741 F. Supp. 3d at 865.

Defendant again relies on *Hubbard* to argue that no offensive intrusion occurred,[5] but for the same reasons explained above, *Hubbard* is factually distinguishable such that it does not further Defendant's argument. Defendant's other authorities fare no better. *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121 (N.D. Cal. 2008) involved the theft of a laptop from the defendant's recruiter, which contained the plaintiff's social security number. *Id.* at 1124-25. *Ruiz* reasoned that *the defendant's conduct* did not constitute a "serious invasion of privacy," as opposed to reasoning, as Defendant intimates, that the theft of a social security number is not egregious. *Id.* at 1127-28. In *Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260 (Ct. App. 2011), the court reasoned that the defendant's

[5] *See* Def.'s Mem. at 7-8.

obtention of plaintiff's publicly available mailing address (to send coupons and advertisements) was "not an egregious breach of social norms, but routine commercial behavior." *Id.* at 265. Here, Plaintiffs' Sensitive Information was not publicly available, went far beyond a mailing address, and was subsequently transmitted and used by Defendant and the Tracking Entities. Thus, Plaintiffs have stated claims under Art. I, § 1, of the California Constitution, and for common law intrusion upon seclusion.

## VI. Plaintiffs Have Stated A Claim For Common Law Fraud

To recover damages for fraud, a plaintiff must show: (1) a misrepresentation or omission of material fact; (2) that the defendant knew to be false; (3) made with the intent to induce reliance; (4) upon which the plaintiff reasonably relied; and (5) that caused injury. *See Gabrielli,* 815 F. Supp. 3d at 872 (citing *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1194 (N.D. Cal. 2020)). Fed. R. Civ. P. 9(b) imposes additional requirements which the Ninth Circuit has held are satisfied by pleading "the who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Plaintiffs' allegations sufficiently answer all five questions.

The "who" is Defendant. *See*, *e.g.*, Compl. ¶¶ 2-4, 45-49, 208-14. The "what" is Defendant's Cookie Banner and Cookie Settings, which falsely represented that users could disable non-essential cookies and prevent third-party tracking. *Id.* at ¶¶ 2-7, 36-57, 208-10. The "when" is each respective visit to the Website in January and March of 2026. *Id.* at ¶¶ 10, 15-16, 36-40. The "where" is Defendant's Website. *Id.* at ¶¶ 2-6. The "how" is the Tracking Tools' continued operation, and Defendant's continued facilitation of the same, after Plaintiffs' affirmative rejection of consent to the sale/sharing of their Sensitive Information. *Id.* at ¶¶ 3-7, 10, 15-16, 50-57, 208-14. These allegations are sufficient. *See Gabrielli*, 815 F. Supp. 3d at 873; *Casillas,* 812 F.Supp.3d at 1035; *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *21.

Defendant argues that Plaintiffs fraud allegations fail for lack of specificity. Def.'s Mem. at 14 (citing *Lee v. Toyota Motor Sales, U.S.A.*, *Inc.*, 992 F. Supp. 2d 962, 977 (C.D. Cal. 2014)). However, *Lee* involved alleged omissions as to a system failure related

to an automobile purchase; the plaintiff's claim for fraud failed because he failed to allege the content of the omission at issue. *See Lee*, 992 F. Supp. 2d at 977. With respect to Defendant's misrepresentations here, "Plaintiff[s] sufficiently allege[] the factual circumstances of [their] fraud claim." *Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *21. "Specifically, [they] allege[] Defendant[] (who), on their website's Cookie Window (where) in [January and March of 2026] (when), represented Plaintiff[s] could use the toggle switch to 'opt out of the sale of personal information' (what), but 'nonetheless caused cookies' and user data to be transmitted third parties (how)." *Id.*

Defendant next argues that "[b]ecause the Cookie Settings are plainly limited to settings as to cookies, Plaintiffs were on notice that the Cookie Settings did not disable other tools like pixels, and it is unreasonable for Plaintiffs to expect otherwise." Def.'s Mem. at 15-16. But Defendant's argument ignores the Complaint's definition of "Tracking Tools,"[6] and explanation that the Tracking Tools (including non-essential cookies) were deployed prior to the opportunity for affirmative consent and persisted after consent was rejected. *See, e.g.*, Compl. ¶¶ 3-7, 10, 15-16, 36-57. Accordingly, Plaintiffs have stated a claim for fraud.

## VII. Plaintiffs Have Stated Claims Under the UCL and CLRA

The UCL provides a cause of action for business practices that are unlawful, unfair, or fraudulent. *See* Cal. Bus. & Prof. Code § 17200. "Unlawful acts are anything that can properly be called a business practice and that at the same time is forbidden by law." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 854 (N.D. Cal. 2022). Similarly, the CLRA "broadly prohibits 'unfair methods of competition and unfair or deceptive acts or practices.'" *Thornton v. Micro-Star Int'l Co.*, No. 2:17-cv-03231-CAS-AFMx, 2018 U.S. Dist. LEXIS 181912, at *15 (C.D. Cal. Oct. 23, 2018) (quoting Cal. Civ. Code § 1770). Here, Plaintiffs' UCL and CLRA claims are properly based on Defendant's

---

[6] "[C]ookies and other third-party tracking technologies." Compl. ¶ 3.

misrepresentations and unlawful conduct. *See* Compl. ¶¶ 197-99, 198, 200-03 (alleging deceptive acts/practices, unlawful conduct).

### A. Plaintiffs Have Standing Under the UCL and CLRA

Courts have held that privacy harms involving personal data of the type alleged confer standing under the UCL. *See In re TikTok, Inc.*, No. MDL 3144-GW-RAOx, 2025 U.S. Dist. LEXIS 218421, at *39-41 (C.D. Cal. Nov. 5, 2025), *adopted sub nom., In re TikTok, Inc.*, No. MDL 3144-GW-RAOx, 2025 U.S. Dist. LEXIS 259966 (C.D. Cal. Nov. 6, 2025); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 881 (N.D. Cal. 2024); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 U.S. Dist. LEXIS 244695, at *47 (N.D. Cal. Dec. 22, 2021). Because the UCL imposes the stricter standing threshold, a plaintiff who satisfies UCL standing will, *a fortiori*, have suffered "any damage" sufficient to establish CLRA standing as well. *See B.K. v. Desert Care Network*, No. 2:23-cv-05021 SPG (PDx), 2024 U.S. Dist. LEXIS 18970, at *19 (C.D. Cal. Feb. 1, 2024).

Here, Plaintiffs visited Defendant's Website and interacted with its Cookie Banner and Cookie Settings, reasonably expecting that Defendant would not collect and share their Sensitive Information without consent. *See* Compl. ¶¶ 15-16 (had Plaintiffs known that Defendant was collecting/sharing data in the manner alleged, they would not have utilized the Website), ¶¶ 150, 204, 217 (unauthorized sale/sharing of Plaintiff's Sensitive Information diminished the value of that data and deprived Plaintiffs of control over their data). Thus, Plaintiffs have established damages sufficient to confer standing under the UCL and CLRA.

Defendant argues that the Website is not a service and that the claim is defective because Plaintiffs did not send notice under Cal. Civ. Code § 1782(a) prior to filing suit. *See* Def.'s Mem. at 12. However, a website that offers online services to the public is within the meaning of "service" under the CLRA. *See Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1264 (N.D. Cal. 2022). In any event, any notice defect has been cured. Plaintiffs served a CLRA notice on Defendant by certified mail on June 4, 2026, and provided it to

defense counsel the same day. *See* Jensen Decl. ¶¶ 2-3, **Exhibits A** and **B** annexed thereto. Because the statutory notice has now been given, dismissal of the damages claim is unwarranted and would in any event be without prejudice. *See Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1110-11 (N.D. Cal. 2010).

### B. Plaintiffs' Claims As To Defendant's Unlawful Conduct Under The CLRA And UCL Are Pled With Sufficient Specificity

Plaintiffs' CLRA claims are grounded in Defendant's misrepresentations contained in its Cookie Banner, Cookie Settings, and subsequent conduct. For the same reasons Plaintiffs' fraud claims are sufficiently pled (explained in § IV, *supra*), Plaintiffs' CLRA claims are sufficiently pled. *See Thornton*, 2018 U.S. Dist. LEXIS 181912, at *14. Further, Plaintiffs' allegations establish that Defendant's conduct is/was unlawful under the UCL because Plaintiff successfully pleads that Defendant violated several other laws, i.e., predicate violations to UCL violations. *See* Compl. ¶¶ 191-92, 197 (Defendant violated the CLRA, Wiretap Act, and CIPA); *see also Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, at 1023 (N.D. Cal. 2019); *In re Zoom Video Communs. Inc. Privacy Litig.,* 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021); *Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 886 (N.D. Cal. 2025).

## VIII. Plaintiffs Adequately Plead Unjust Enrichment

To plead unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *23. Courts have permitted unjust enrichment claims where a plaintiff alleges an entitlement to defendant's profits derived from users' personal data. *See In re Facebook*, 956 F.3d at 600; *see also Pemberton*, 2025 U.S. Dist. LEXIS 230964, at *23-25; *Gabrielli*, 815 F. Supp. 3d at 875. This case is no different. Plaintiffs' allegations that Defendant benefited financially by selling and/or sharing their Sensitive Information without consent are sufficient to establish unjust enrichment. *See A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25,

2024).

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied. Should the Court grant Defendant's Motion, Plaintiffs respectfully request leave to amend. *See Roney v. Miller*, 705 F. Appx. 670, 671 (9th Cir. 2017).

DATED: June 22, 2026

Respectfully submitted,

*/s/ Mark Jensen*

Mark Jensen*
mjensen@zlk.com
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Yufei Wang (SBN 346170)
ywang@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, June 22, 2026 I filed the foregoing Plaintiffs' Opposition to Defendant's Motion to Dismiss with the Court using the CM/ECF system. Notice of this filing will be sent automatically by the CM/ECF system to all counsel of record.

*/s/ Mark Jensen*
Mark Jensen

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,553 words, which complies with the 5,600-word limit set by court order dated April 30, 2026 (ECF No. 14).

Dated: June 22, 2026

*/s/ Mark Jensen*
Mark Jensen