UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03814-RGK-E | Date | July 28, 2026 |
| Title | ***Steve Shannon et al. v. Health Net LLC*** | | |

| | | |
|---|---|---|
| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Defendant's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim [22]**

## I. INTRODUCTION

On April 9, 2026, Plaintiffs Steve Shannon and Rebekka Lien, (together, "Plaintiffs") filed a Class Action Complaint ("Complaint") against Defendant Health Net LLC ("Defendant"). Plaintiffs bring the following claims for relief on behalf of a Class and Subclass alleging:

- (1) violation of the federal Wiretap Act, 18 U.S.C. § 2510, et seq., on behalf of Plaintiffs and the Nationwide Class
- (2) common law invasion of privacy, on behalf of Plaintiffs and the Nationwide Class
- (3) invasion of privacy and violations of California Constitution, Art. 1, § 1, on behalf of Plaintiffs and the California Subclass
- (4) violations of the California Invasion of Privacy Act, Cal. Penal Code § 631, on behalf of Plaintiffs and the California Subclass
- (5) violations of the California Invasion of Privacy Act, Cal. Penal Code § 638.51, on behalf of Plaintiffs and the California Subclass
- (6) violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770, et seq., on behalf of Plaintiffs and the California Subclass
- (7) violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., on behalf of Plaintiffs and the California Subclass
- (8) common law fraud, deceit, and/or misrepresentation, on behalf of Plaintiffs and the Nationwide Class
- (9) unjust enrichment, on behalf of Plaintiffs and the Nationwide Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03814-RGK-E | Date | July 28, 2026 |
| Title | ***Steve Shannon et al. v. Health Net LLC*** | | |

Defendant moves to dismiss all claims asserted against it under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim.

For the following reasons, the Court **GRANTS with leave to amend** Defendant's Motion to Dismiss for lack of jurisdiction, and **DENIES** Defendant's Motion to Dismiss for failure to state a claim as **moot**.

## II. FACTUAL BACKGROUND

The following facts are alleged in the Complaint:

Defendant is a for-profit corporation that operates a commercial website at https://www.healthnet.com/content/healthnet/en_us.html ("Website"). Users of the Website can browse and enroll in health insurance plans; access information regarding coverage and providers; locate and interact with healthcare providers and facilities; manage member accounts; review claims, billing, and payment information; obtain customer support; and explore wellness programs and promotional offerings.

The Website displays a cookie banner and a "cookie preferences" interface. The tracking tools collect users' detailed information including interaction and behavioral data. This data may include webpages and products viewed or purchased; inferred interests, preferences, age, location, or other characteristics based on user behavior and content engagement; and personal, device, and technical identifiers. The data may also include identifiers that enable recognition of users across sessions and websites, users' email addresses, and approximate geolocation information derived from IP addresses or similar signals.

Defendant's Website allowed users to disable non-essential cookies which has the function of limiting the Website's use of cookies to those essential for the Website to function. However, even after disabling non-essential cookies, the Website continued to use and deploy tracking mechanisms that transmit users' data to third party advertising, social media, and analytics companies that designed and operate the tracking mechanisms. These third parties then use the Website users' data for monetary gain.

## III. JUDICIAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) where a court lacks subject matter jurisdiction over the plaintiff's claims. It is well-established that "[f]ederal courts are courts of limited jurisdiction" and presumptively lack jurisdiction over an action. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *Id.* At the pleading stage, this burden is met by pleading sufficient allegations to show a

proper basis for the court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). One of the essential components of the Article III case-or-controversy requirement is that a plaintiff must have standing. *Id.* For a plaintiff to have standing, they must establish: (1) an injury in fact; (2) that is traceable to the challenged conduct; and (3) is likely to be "redressed by a favorable judicial decision." *Id.* at 560–61. Plaintiffs must also demonstrate that they "suffered a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)).

## IV. <u>DISCUSSION</u>

Defendant moves to dismiss all of Plaintiffs' claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As jurisdiction is a threshold issue, the Court first addresses the jurisdictional question raised by Defendant—whether Plaintiffs have failed to allege a concrete injury and therefore lack standing under Article III of the United States Constitution.

In privacy cases, "[u]nless the retention of unlawfully obtained or created information amounts to the type of concrete injury recognized by the Supreme Court, it is insufficient to establish standing." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023). A recognized concrete injury includes "any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 427. With respect to intangible harms, the Supreme Court in *TransUnion* specifically cited "reputational harms, disclosure of private information, and intrusion upon seclusion" as examples of such harms. *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 425)). General allegations that the common-law protects privacy rights are insufficient to confer standing. *See id*. Instead, courts must "assess[] whether the *specific* plaintiffs had experienced harm of that nature." *Id.* Harm in privacy actions is the kind that would be "highly offensive to a reasonable person." *See* Restatement (Second) of Torts § 652D.

Post-*TransUnion*, in a Ninth Circuit privacy case, the court articulated a framework for determining whether a plaintiff's injury is concrete. *Popa*, 153 F.4th at 790. Simply put, in deciding whether a concrete harm has been alleged, a court must look to "the *specific* underlying harm experienced by the plaintiff and compare[s] it, in detail, to a *specific* common-law tort" ultimately assessing whether "an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Id.*

Within this doctrinal framework, the Court considers the specific underlying harm Plaintiffs allege in the instant matter.

Plaintiffs allege that the Website displays a cookie banner that purports to give users "meaningful control" over what data the Website shares with third parties. However, the Website "plac[es] and transmit[s] cookies and other third-party tracking technologies … capable of transmitting users' data the moment user visits the Website," regardless of the users' interaction with the Cookie Banner. (Compl. ¶¶ 2–3.) Plaintiffs further allege that even if the users reject all non-essential cookies, the Website continues to use and deploy various tracking mechanisms, thereby transmitting users' data to third parties, including advertising, social media, and analytics companies. Therefore, the collection and transmission of the users' data form the basis of the underlying harm.

Based on the allegations the Court separates the data at issue into two categories: information Plaintiffs allege *was* transmitted, and information Plaintiffs allege *may* have been transmitted.

### A. Information That Was Transmitted[1]

With respect to the first category of data, Plaintiffs allege that Defendant transmitted sensitive data that includes (1) detailed interaction and behavioral data; (2) browsing activity and account-related interactions; (3) pages viewed; (4) other engagement data; and (5) "persistent identifiers" that enable recognition of users across sessions and websites, including email addresses and approximate geolocation information derived from IP addresses or similar signals. (Compl. ¶¶ 5, 16.) Plaintiffs state that communications "reflecting users' choices, intent, and behavior on commercial websites, such as searches, browsing, and order interactions, are sensitive and convey the substance and meaning of the communication." (Compl. ¶ 133.) Plaintiffs further allege that they had a reasonable expectation of privacy in their electronic communications with the Website, "particularly where Defendant represented through their Cookie Settings, that users could decline non-essential cookies." (Compl. ¶ 132.) When Defendant made this representation but continued to collect users' data nonetheless, and without Plaintiffs' consent, Defendant violated Plaintiffs' reasonable expectation of privacy and thus caused harm to Plaintiffs.

The allegations regarding the first category of data are insufficient to confer standing. In *Popa*, the plaintiff similarly alleged that the defendant's website tracked her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications." *Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456 *1, *1 (W.D. Wash. Oct. 24, 2023); *see also Popa*, 153 F.4th at 786. The *Popa* court found that the plaintiff lacked standing because the allegations failed to establish how the website's tracking of her interactions caused her harm "remotely similar" to "highly offensive interferences or disclosures that

[1] The sole basis for this designation is Plaintiffs' omission of the word, "may."

were actionable at common law. *Popa*, 153 F.4th at 791, 795. The same is true here. As generally alleged, information related to interaction and behavioral data, browsing activity and account-related interactions, pages viewed, engagement data, and "persistent identifiers" including email addresses and approximate geolocation information reveal nothing more than users' general identifying information, what the users have seen, and the products and services that interest the users. *See Popa*, 153 F.4th at 792, 794 (explaining that a plaintiff who pitches allegations that the common law protects privacy rights "at a high level of generality" fails to establish standing under the post-*TransUnion* standard).[2]

**B. <u>Information That "May" Have Been Transmitted</u>**

With respect to the second category, Plaintiff contends that data the Website transmitted "*may include*" (1) webpages and products viewed or purchased; (2) inferred interests, preferences, age, location or other characteristics based on user behavior and interaction; and (3) personal, device, and technical identifiers such as device type, operating system, and browser type, known as metadata. (Compl. ¶ 5 (emphasis added).) For the most part, the types of information listed above suffer the same defect as discussed in Section IV.A., above.

The second category of data, however, suffers a threshold defect as well. In determining whether a concrete injury has been alleged, the post-*TransUnion* test *Popa* articulates places emphasis on comparing, in detail, the harm plaintiff specifically experiences to a specific common-law tort. *See Popa*, 153 F.4th at 790. Here, Plaintiffs merely allege that certain types of data "*may*" have been disclosed. This is insufficient for purposes of making a realistic determination regarding what harm Plaintiffs *actually* suffered. As such, the Court finds the allegations regarding the second category of data overly vague and speculative to adequately establish a specific underlying harm. Without more, Plaintiffs fail to satisfy their burden of establishing a concrete injury that supports Article III standing.

Plaintiffs bear the burden of establishing subject matter jurisdiction. *See McNutt*, 298 U.S. at 189. Plaintiffs have not established an injury in fact; therefore, the Court finds that Plaintiffs lack Article III standing. Because Plaintiffs predicate all their claims on the same asserted injury—the unauthorized collection of their data—the Court's conclusion that Plaintiffs have failed to allege a concrete injury applies equally to each of their claims, and the Court dismisses the action under Rule 12(b)(1).[3]

---

[2] The parties should note that, to the extent the data may include such basic information as one's email address, phone number, username, etc., other district courts have found this type of information not private, as their revelation would not rise to the level of "highly offensive to a reasonable person." *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022). The Court agrees with this reasoning.

[3] Finding that Plaintiffs have not alleged a specific underlying harm required to establish injury in fact, the Court declines to consider whether any such harm is analogous to a common-law tort, as required by step two of the *Popa* analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-03814-RGK-E | Date | July 28, 2026 |
| Title | ***Steve Shannon et al. v. Health Net LLC*** | | |

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(1) is **GRANTED with leave to amend**. Any amended complaint must be filed within **10 days** of the date this Order is entered. Any Answer to such amended complaint must be filed within **10 days** of the date the amended complaint is filed.

Defendant's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) is **DENIED as moot**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer JRE/vc